THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDITH JONES, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>                v.<br><br>PNC BANK, N.A.,<br><br>                Defendant. | Case Number:<br><br>Judge:<br><br>Magistrate Judge: |

## CLASS ACTION COMPLAINT

Plaintiff Judith Jones ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following against Defendant PNC Bank, N.A. ("PNC" or "Defendant"), based on personal knowledge as to Plaintiff, and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiff's counsel.

## INTRODUCTION

1. This action concerns PNC's practice of knowingly collecting unearned fees for Guaranteed Automobile Protection Waivers ("GAP Waiver") after the early payoff of a customer's retail installment sales contract (also referred to herein as the "finance agreement"). PNC knows these fees have not been earned, and will never be earned, but nevertheless includes them in the payoff amount when the customer pays off their contract early. PNC then refuses to refund these unearned GAP fees to its customers, even though PNC is contractually and legally obligated to do so as the assignee/creditor/lienholder of the finance agreement and GAP Waiver. As a result of this practice, PNC knowingly collects and keeps millions in unearned GAP fees from its customers each year.

1

**FACTUAL BACKGROUND**

2.      **What is a Retail Installment Sales Contract?**  Plaintiff and the Class financed the purchase of their cars by entering into retail installment sales contracts with auto dealers (the "dealers").  Under the agreements, Plaintiff and the Class agreed to pay for the price of their cars in the future over a fixed period of years, with interest, in monthly installment payments.  The dealers then immediately sold and assigned those contracts to PNC.  Thereafter, all future payments on the contracts were made directly to PNC.

3.      **What is the difference between a Retail Installment Sales Contract and a Loan?**  Although similar, a retail installment sales contract (also referred to herein as the "finance agreement") is different from an auto loan.  As the U.S Consumer Financial Protection Bureau explains: "A loan is a transaction between you and a bank or other lender for money, where you use the money to purchase a vehicle and agree to repay the loan balance plus interest.  A retail installment sale, on the other hand, is a transaction between you and the dealer to purchase a vehicle where you agree to pay the dealer over time, paying both the value of the vehicle plus interest.  A dealer could sell the retail installment sales contract to a lender or other party."  (See CFPB, www.consumerfinance.gov/ask-cfpb/what-is-a-retail-installment-sales-contract-or-agreement-is-this-a-loan-en-817/.)  The latter scenario is exactly what happened in the present case. Plaintiff and the Class entered into retail installment sales contracts with the dealers, which were then immediately sold and assigned to PNC.  Thereafter, PNC became the creditor on the agreements.

4.      **What is a GAP Waiver?** Each of the retail installment sales contracts at issue in



this lawsuit included a GAP Waiver.  A GAP Waiver is an addendum to the retail installment sales contract which amends the terms of the contract and becomes a part of the agreement.  It is a debt cancellation agreement, which provides that in the event a customer suffers a "total loss" of their vehicle and the

2

actual cash value of their vehicle is worth less than the balance owed to the creditor, then the creditor will agree to waive the difference. This difference is known as the "GAP."

5. For example, assume a customer's car is stolen and the customer still owes $10,000 in payments on their retail installment sales contract. Also, assume the customer's liability insurer only agrees to pay $8,000 for the "total loss" of the vehicle. Without a GAP Waiver, the customer would still owe the $2,000 difference to PNC as the creditor on the contract, even though the customer no longer possesses the vehicle. However, if the retail installment sales contract has a GAP Waiver, then PNC is required to "waive" the $2,000 difference.[1]

6. **How does a customer pay for GAP Coverage?** Customers pay for GAP coverage in monthly installments over the life of their finance agreement. The total cost of GAP coverage for the full term of the retail installment sales contract is separately listed on the contract as part of the total amount financed (the "GAP fees"). The retail installment sales contract will also list the total amount of interest that the customer will pay over the full term of the contract (the "finance charge"). However, while the customer is told up-front what the total cost of the GAP coverage and finance charge will be for the full term of the retail installment sales contract, the customer actually pays those amounts incrementally over time to PNC on a month-to-month basis, which is included in the monthly payments for their car.

7. **What are Unearned GAP Fees?** When customers pay off their finance agreements early (before the original maturity date) this results in what PNC and the rest of the auto finance industry refer to as "unearned GAP fees" and "unearned finance charges." For example, if the total cost of GAP protection for four years of GAP coverage is $800, but the customer pays off their finance agreement in two years, this results in $400 of "unearned GAP fees" for the unused half of the contract term. This portion of the GAP fees is "unearned" because once the finance agreement is paid-off early, there is no possibility of a GAP and the customer is

---

[1] By structuring the transaction as a "debt cancellation agreement," rather than "insurance," PNC is able to avoid insurance regulations designed to protect consumers, such as regulations regarding the amount charged for insurance protection and a dealer's ability to offer GAP coverage to customers without an insurance license.

3

no longer receiving anything of value by paying for future GAP protection. Similarly, when the finance agreement is paid off early, the difference between the interest that had accrued up to the date of the early payoff and the total finance charge listed on the contract is known as the "unearned finance charge," because the customer no longer owes interest for the unused term of the agreement.

8. **How is PNC Collecting and Keeping Unearned GAP Fees?** When a customer wants to pay off their finance agreement early (i.e., before the end of the contract term), PNC informs the customer of the total payoff amount. PNC does not include the unearned finance charge in the total payoff amount quoted to customers, but it will include the amount of the unearned GAP fees. In other words, at the time of the early payoff, PNC fraudulently represents to its customers (including Plaintiff and the Class) that they owe PNC the unearned GAP fees for the remaining term of the contract, even though PNC knows these fees are not earned, and can never be earned, because the finance agreement is terminating early. PNC then collects and keeps these unearned GAP fees, unless the customer affirmatively requests a refund, which rarely happens. As a result of this practice, PNC routinely collects and keeps tens of millions of dollars of unearned money *each year* that rightfully belongs to its customers.

9. **The Early Payoff of the Finance Agreement Automatically Cancels the GAP Waiver Addendum.** As explained above, the GAP Waiver is simply an addendum to the retail installment sales contract and is a part of the agreement. Consequently, the early payoff of the contract results in an *automatic* termination and cancellation of the GAP Waiver addendum.

10. **PNC Always Knows Its Customers are Entitled to a Credit or Refund of Unearned GAP Fees When There is an Early Payoff of the Finance Agreement.** PNC *always* knows when there has been an early payoff of the finance agreement because PNC, as the creditor, is the entity receiving the early payoff. Likewise, PNC *always* knows it customers are entitled to a credit or refund of the unearned GAP fees after an early payoff, because PNC knows that once the retail installment sales contract is terminated early, there is no basis for continuing to charge customers for future GAP coverage. Consequently, there is no legitimate basis for PNC to include

4

the unearned GAP fees in the early payoff amount quoted to customers, nor is there any legitimate basis to collect such unearned money from its customers and then refuse to give it back unless the customers affirmatively request a refund.

11. PNC perpetuates its scheme to collect and keep unearned GAP fees by failing to advise customers in its early payoff letters that they are entitled to a refund of the unearned GAP fees, and instead suggests that the loan, including any refunds, is paid off and there is nothing more for the customer to do. PNC misleadingly conceals and fails to disclose in these payoff letters that: (i) PNC knows for a fact that the customer is entitled to a refund of the unearned GAP fees; (ii) PNC knows the exact amount of the refund; and (iii) PNC knows that it is the entity that is contractually obligated to issue the credit or refund of the unearned GAP fees to the customer.

12. PNC breached its contracts with Plaintiff and the Class Members by failing to refund the unearned GAP fees it collected after Plaintiff and the Class Members paid off their finance agreements early.

13. PNC is continuing its fraudulent, unfair and unlawful practice of including unearned GAP fees in the total payoff amount and refusing to automatically issue a credit or refund of those fees to its customers upon an early payoff. Plaintiff intends to enter finance agreements with GAP Waivers in the future which may be assigned to PNC and are thus at risk of being harmed by this practice in the future, just like the rest of the public. Thus, Plaintiff on behalf of herself, the Class, and the general public are seeking:

    a. An order requiring PNC to refund all unearned GAP fees it collected after the early payoff of the finance agreement to every customer in the United States;

    b. An order requiring PNC to pay the interest that accrued on those delinquent refunds;

    c. An order requiring PNC, on a go-forward basis, to either: (i) issue a credit for the unearned GAP fees in the early payoff amount quoted to customers; or (ii) directly refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement; and

    d. Damages, restitution and all other relief as may be just and proper.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from one of the defendants, there are 100 or more Class Members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

15. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391. PNC regularly conducts business in the Northern District and a substantial part of the events giving rise to the claims asserted herein occurred in this district in Winnebago County, Illinois.

## THE PLAINTIFF

16. Plaintiff Judith Jones is an individual (a) who entered into a finance agreement with a GAP Waiver addendum that was assigned to PNC; (b) who paid off her finance agreements to PNC before the end of the contract term set forth in the finance agreement; and (c) who did not receive a refund of the unearned GAP fees collected by PNC and/or the accrued interest on those unpaid fees.

17. At all relevant times, Plaintiff Jones is a citizen of the State of Illinois, and a resident of Rockford, Illinois. Plaintiff Jones purchased a 2010 Nissan Sentra from Anderson Nissan, Mazda, Suzuki, on January 31, 2012. Plaintiff Jones financed the purchase of her car by entering into a finance agreement with a 72-month term. The finance agreement included a GAP Waiver addendum. The amount of the GAP Waiver was $695.00 for the full term of the contract. The finance agreement (including its GAP Waiver addendum) was purchased by and assigned to PNC shortly after Plaintiff Jones purchased her vehicle.

18. Plaintiff Jones paid off the full balance of her finance agreement by written check on or about April 18, 2017, or approximately 64 months after the contract start date. PNC recorded the pay-off date, in writing, in PNC's computer records. PNC also issued a written confirmation letter to Plaintiff Jones advising her that "[t]his letter is sent to confirm that your Loan has been paid in full.… Once again, thank you for completing repayment of your Loan," thus advising

Plaintiff Jones that she had paid off the amount owed under the finance agreement before the end of the original loan term.

19. PNC failed to refund Plaintiff Jones her unearned GAP fees. Calculated on a pro-rata basis, PNC owes Plaintiff Jones approximately $91.32 in unearned GAP fees, excluding interest.

## DEFENDANT

20. Defendant PNC, N.A., d/b/a PNC Auto Finance ("PNC") is a national association bank chartered in Delaware. PNC is the assignee of the finance agreements of Plaintiff and the Class Members, including the GAP Waiver addendums to those finance agreements.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class and Subclass:

    **a.** **Nationwide Class**: Plaintiff seeks to represent a nationwide class including all persons: (1) who entered into finance agreements that included GAP Waiver addendums that were assigned to PNC; (2) who paid off their finance agreements before the end of the contract term; and (3) who did not receive a credit or refund of the unearned GAP fees and/or the accrued interest on those unpaid amounts (the "Nationwide Class"). On behalf of the Nationwide Class, Plaintiff is asserting claims against PNC for breach of contract, money had and received and declaratory relief. The class period is based on the applicable statutes of limitations in each State.

    **b.** **The Illinois Subclass:** Plaintiff seeks to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered into their applicable finance agreements and GAP Waiver addendums in the State of Illinois (the "Illinois Subclass"). On behalf of the Illinois Subclass, Plaintiff is asserting claims against PNC for breach of contract, money had and received and declaratory relief. The class period is based on the applicable statute of limitations.

22. Excluded from the proposed Class and Subclass are: (a) Defendant and its agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiff

7

and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

23. Plaintiff reserves the right to revise the definition of the Class based upon subsequently-discovered information.

24. **Numerosity:** While the exact numbers of the members of the Class and Subclass are unknown to Plaintiff at this time, membership in the Class may be ascertained from the records maintained by PNC. At this time, Plaintiff is informed and believes that the Class includes hundreds of thousands, if not millions, of members and the Subclass includes tens of thousands of members. Therefore, the Class and Subclass are sufficiently numerous that joinder of all members of the Class and Subclass in a single action is impracticable under Fed. R. Civ. P 23(a)(1), and the resolution of their claims through a class action will be of benefit to the parties and the Court.

25. **Ascertainability:** The names and addresses of the members of the Class and Subclass are contained in PNC's records. Notice can be provided to the members of the Class and Subclass through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state and federal law.

26. **Common Facts:** Common facts exist as to all members of the Class and Subclass and predominate over any issues affecting individual members of the Class and Subclass. The common facts include the following:

    a. Plaintiff and the members of the Class and Subclass entered into finance agreements including GAP Waiver addendums to finance the purchase of their vehicles.

    b. The finance agreements and GAP Waiver addendums are form contracts approved by PNC and offered to customers on a take-it-or-leave-it basis.

    c. The finance agreements and GAP Waiver addendums were purchased by and assigned to PNC.

    d. Every finance agreement entered by Plaintiff and the members of the Class and Subclass contained a provision stating that: "Any holder of this consumer credit contract is

subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

  e. PNC was the assignee and "holder" of every finance agreement and GAP Waiver addendum entered by Plaintiff and the members of the Class.

  f. The total purchase price for GAP coverage for the full term of the finance agreement was listed as a separate line item on the first page of the finance agreement and included in the total amount financed.

  g. After the assignment to PNC, Plaintiff and the members of the Class and Subclass were required to make all payments under the finance agreements to PNC with interest including, but not limited to, the monthly payment of GAP fees.

  h. PNC approved the terms and language of every GAP Waiver form.

  i. PNC, as the purchaser and assignee of the finance agreement, was the lienholder/creditor of every GAP Waiver addendum entered by Plaintiff and the members of the Class and Subclass.

  j. When a GAP Waiver addendum is terminated before the end of the contract term, PNC, and the auto finance industry, refer to the unused portion of the GAP fees as "unearned fees" or "unearned GAP fees."

  k. Every GAP Waiver form provides that customers have the right to cancel the GAP Waiver at any time and receive a refund of the unearned GAP fees.

  l. Every GAP Waiver is automatically cancelled and terminated when the finance agreement is paid off before the end of the contract term.

  m. Plaintiff and the members of the Class and Subclass paid off the balances on their finance agreements early – *i.e.*, before the end of the original contract term.

  n. PNC received written notice that Plaintiff and the members of the Class and Subclass paid off their finance agreements before the end of the original contract terms and thereby cancelled their GAP Waiver addendums early, because (1) these customers paid off their balances through written instruments, *e.g.*, checks, wires or electronic payments; (2) PNC recorded the pay-

off date, in writing, in PNC's records; and (3) PNC issued written confirmation letters to the customers confirming they paid off their respective finance agreements before the end of the original contract terms.

    o.  PNC possessed, and possesses, all of the information necessary to calculate the unearned GAP fees when Plaintiff and the members of the Class and Subclass paid off their finance agreements early, including (1) the method for calculating the refund (*e.g.*, the pro-rata method); (2) the total purchase price for GAP coverage for the full term of the contract; (3) the date of the early payoff and resulting cancellation of the agreement; and (4) the amount of time remaining under the original contract term.

    p.  Rather than deduct the unearned GAP fees from the total payoff amount, PNC's common policy and practice throughout the United States is to include the unearned GAP fees in the total payoff amount quoted to customers when they seek to pay off their finance agreements early.

    q.  In conformance with its common policy and practice, PNC included the unearned GAP fees in the total payoff amount quoted to Plaintiff and the members of the Class and Subclass.

    r.  In conformance with its common policy and practice, PNC collected unearned GAP fees from Plaintiff and the members of the Class and Subclass and did not refund the unearned GAP fees to Plaintiff and the members of the Class and Subclass.

    s.  PNC's common policies and practices with respect to GAP Waivers are the same regardless of the language in the GAP Waiver forms. In other words, PNC treats all GAP Waiver forms as uniform in its business operations.

27.  **Common Questions of Law:** Common questions of law exist as to all members of the Class and Subclass and predominate over any issues solely affecting individual members of the Class and Subclass. The common questions of law include, but are not limited to:

    a.  Whether the early payoff of the finance agreement automatically cancels the GAP Waiver addendum.

b. Whether PNC, as the assignee, owes a contractual obligation to the customer to issue a credit or refund of unearned GAP fees.

c. Whether PNC owes the interest that accrued on the unpaid refund amounts.

d. Whether PNC's actual notice that the finance agreements have been paid off early is sufficient to trigger PNC's credit and refund obligations under the GAP Waivers.

e. Whether the payment of the final payoff amount constitutes written notice to PNC that the finance agreement has been paid off early, if any such notice is required.

f. Whether PNC's records of the final payoff date and PNC's payoff confirmation letters constitute sufficient written notice to PNC under any applicable notice provision that the finance agreements have been paid off early thereby entitling Plaintiff and the members of the Class and Subclass to a refund of their unearned GAP fees.

g. Whether Plaintiff and the members of the Class and Subclass actually and/or substantially complied with any purported notice requirements in the GAP Waiver addendums by providing notice to the party with the refund obligation (PNC) that the finance agreements have been paid off early.

h. Whether it would be unjust to conclude that Plaintiff and the members of the Class and Subclass forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from any purported notice requirement in the GAP Waivers, especially where, as here, the party with the refund obligation (PNC) received actual notice.

i. Whether it would be unconscionable to conclude that Plaintiff and the members of the Class and Subclass forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from any purported notice provision in the GAP Waivers, especially where, as here, the party with the refund obligation (PNC) received actual notice.

j. Whether the unearned GAP fees constitute money that in equity and good conscience belongs to Plaintiffs and the member of the Class and Subclass

k. Whether a contractual provision, if any, requiring Plaintiff and the members of the Class and Subclass to send a subsequent written notice that the finance agreement has been

paid off early as a condition precedent to a refund is enforceable, when the party with the refund obligation (PNC) already knows the finance agreement has been paid off early.

    l.  Whether any interpretation by PNC of any notice provisions as a condition precedent requiring strict compliance would result in a disproportionate forfeiture of unearned GAP fees after an early payoff.

    m.  Whether Plaintiff and the members of the Class and Subclass are entitled to damages and restitution in the amount of the unearned GAP fees, as well as the accrued interest on those unpaid amounts.

    n.  Whether Plaintiff and the members of the Class and Subclass are entitled to an award of reasonable attorneys' fees and costs.

    o.  Whether the Court should issue a public injunction requiring PNC to either: (1) refrain from including unearned GAP fees in the total payoff amount quoted to customers; or (2) automatically refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement.

  28.  **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class and Subclass. Plaintiff has been subjected to the same wrongful business practices and has been damaged in the same manner. Specifically, PNC included unearned GAP fees in the total payoff amount quoted to Plaintiff and then proceeded to collect those unearned GAP fees without issuing a credit or refund to Plaintiff, nor paying interest on the delinquent amounts.

  29.  **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class and Subclass because she does not have any interests which are adverse to the interests of the members of the Class and Subclass. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

30. Plaintiff's interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclass. Plaintiff will undertake to represent and protect the interests of the absent members of the Class and Subclass.

31. Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex consumer class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and the absent members of the Class and Subclass.

32. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because: (1) the class members do not have an interest in individually controlling the prosecution of separate actions; (2) there is no pending litigation concerning the controversy already begun by class members; (3) it is desirable to concentrate the litigation of the claims in this particular forum; and (4) there will be no difficulties in managing this case as a class action. The superiority requirement is satisfied because a class action here would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

33. **Predominance:** Class action status is warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members. The interests of the members of the Class and Subclass in individually controlling the prosecution of separate actions are theoretical and not practical. Prosecution of this action through multiple Class Representatives would be superior to individual lawsuits. Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CLAIM
## BREACH OF CONTRACT
**(On Behalf of Plaintiff and the Class and Subclass)**

34. Plaintiff hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

35. Plaintiff brings this claim on behalf of herself and the members of the Class and Subclass.

36. Plaintiff and the members of the Class and Subclass entered into finance agreements including GAP Waivers with various automobile dealerships who then assigned these agreements to PNC.

37. After PNC purchased the finance agreements with GAP Waivers, the only two contracting parties to the GAP Waiver were Plaintiff and the members of the Class and Subclass, on the one hand, and PNC, on the other hand.

38. The GAP Waiver addendums provide that the creditor on the agreement (which, after the assignment, is PNC) will issue a credit or refund of unearned GAP fees if the GAP Waiver is cancelled before the end of the original contract term, so long as the creditor (PNC) has not been required to waive any GAP amounts under the agreement.

39. Plaintiff and the members of the Class and Subclass paid off the finance agreements early, which resulted in the automatic cancellation and termination of the GAP Waiver addendum before the end of the original contract term.

40. At the time of the early payoff, PNC included the unearned GAP fees in the total payoff amount quoted to Plaintiff and the members of the Class and Subclass.

41. Plaintiff and the members of the Class and Subclass paid the total payoff amount to PNC, including the unearned GAP fees.

42. Plaintiff and the members of the Class and Subclass provided written notice to PNC that they were cancelling and terminating the GAP Waiver by paying off the finance agreement early (i.e., prior to the end of the original contract term).

43. Plaintiff and the members of the Class and Subclass actually and/or substantially complied with all of their contractual obligations under the GAP Waivers, including, but not limited to, any purported written notice requirements.

44. In breach of the finance agreements and GAP Waiver addendums, PNC wrongfully collected the unearned GAP fees upon the early payoff of the finance agreements and failed to refund those amounts to Plaintiff and the members of the Class and Subclass as required under the GAP Waiver addendums.

45. Plaintiff and the members of the Class and Subclass were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because PNC failed to issue a credit or refund of the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

46. PNC is liable to Plaintiff and the members of the Class and Subclass for the damages they suffered as a direct result of PNC's collection and failure to promptly issue a credit or refund of the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

47. Because PNC received actual notice of the early payoff, allowing PNC to keep these unearned GAP fees would result in a disproportionate forfeiture. Plaintiff and the members of the Class and Subclass cannot currently obtain a refund of these amounts.

**SECOND CLAIM**
**MONEY HAD & RECEIVED**
**(On Behalf of Plaintiff and the Class and Subclass)**

48. Plaintiff hereby repeats, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 33 above as though the same were fully set forth herein.

49. Plaintiff and the members of the Class and Subclass paid off their finance agreements early, i.e., before the original maturity date.

50. Shortly before their early payoffs, PNC informed Plaintiff and the members of the Class and Subclass about the total amount of money they would need to send PNC if they wanted to pay off their finance agreements early. PNC did not include the unearned finance charge in the

15

total payoff amount quoted to Plaintiff and the members of the Class and Subclass, but it did include the amount of the unearned GAP fees. In other words, at the time of the early payoff, PNC fraudulently represented to Plaintiff and the members of the Class and Subclass that they owed PNC the unearned GAP fees for the remaining term of the finance agreement, even though PNC knew these fees were not earned, and could never be earned, because the finance agreement was terminating early.

51. PNC included the unearned GAP fees in the total payoff amount with the intent that Plaintiff and the members of the Class and Subclass would rely on that representation and believe that those fees were earned and owed to PNC and would, thus, pay those fees to PNC.

52. In actual and justifiable reliance on PNC's representations, Plaintiff and the members of the Class and Subclass were compelled to pay PNC the total payoff amount quoted by PNC, including the unearned GAP fees.

53. If Plaintiff and the members of the Class and Subclass did not pay the total amount quoted by PNC, including the unearned GAP fees, then PNC would not release its lien on the vehicle and Plaintiff and the member of the Class and Subclass would suffer resulting injury thereby.

54. Plaintiff and the members of the Class and Subclass did not receive any consideration for the unearned GAP fees collected by PNC.

55. PNC maintains possession of the unearned GAP fees belonging to Plaintiff and the members of the Class and Subclass. This money in equity and good conscience belongs to Plaintiff and the members of the Class and Subclass.

56. PNC obtained the unearned GAP fees through false pretenses as set forth in Paragraph 50 above and it would be unjust to allow PNC to keep these unearned GAP fees under these circumstances.

57. Plaintiffs and the members of the Class and Subclass seek restitution of the unearned GAP fees collected and retained by PNC, as well as the interest that accrued on those amounts.

58. To the extent necessary, Plaintiff pleads this claim in the alternative to the breach of contract claim.

## THIRD CLAIM
## DECLARATORY RELIEF
**(On Behalf of Plaintiff and the Class and Subclass)**

59. Plaintiff hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

60. There exists a present controversy between the parties as to the following issues:

    a. Whether PNC, as the assignee, owes a contractual obligation to the customer under the GAP Waiver addendums to refund unearned GAP fees when the finance agreement has been paid off early.

    b. Whether PNC is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

61. Plaintiff and the members of the Class contend PNC owes these obligations.

62. Accordingly, Plaintiff and the members of the Class hereby request the Court issue an order declaring that:

    a. PNC, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

    b. PNC is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against PNC in favor of Plaintiff and the members of the Class and Subclass and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiff as the representative of the Class and

Subclass, and appointing Plaintiff's counsel as Class Counsel for the Class and Subclass;

2. An order declaring the following:
    a. PNC, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.
    b. PNC is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.
3. An injunction requiring that PNC either: (1) refrain from collecting unearned GAP fees upon an early payoff of the finance agreement, either directly by the customer, or indirectly from the refinancing entity in the event the customer refinances the vehicle; or (2) automatically refund those unearned fees, plus interest, back to the customer promptly upon the early payoff of the finance agreement, either directly by the customer, or indirectly from the refinancing entity in the event the customer refinances the vehicle;
4. An award to Plaintiff and the members of the Class and Subclass of all appropriate relief, including actual damages, restitution and disgorgement of the unearned GAP fees;
5. An award of all costs for prosecuting the litigation, including expert fees;
6. An award of pre- and post-judgment interest;
7. An award of attorneys' fees; and
8. An order granting any such additional relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all claims in this action.

Dated: April 14, 2021

By: /s/ *Robert A. Clifford*
Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31stFloor
Chicago, Illinois 60602
Telephone: 312-899-9090
rclifford@cliffordlaw.com
smm@cliffordlaw.com

FRANKLIN D. AZAR & ASSOCIATES, P.C.
Franklin D. Azar (*pro hac vice* forthcoming)
Michael D. Murphy (admitted to the N.D. Ill. general bar)
Brian J. Hanlin (*pro hac vice* forthcoming)
Margeaux R. Azar (*pro hac vice* forthcoming)
Alexander F. Beale (*pro hac vice* forthcoming)
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
azarf@fdazar.com
murphym@fdazar.com
hanlinb@fdazar.com
azarm@fdazar.com
bealea@fdazar.com

FRANK SIMS & STOLPER LLP
Jason M. Frank (*pro hac vice* forthcoming)
Andrew D. Stolper (*pro hac vice* forthcoming)
Scott H. Sims (*pro hac vice* forthcoming)
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone: (949) 201-2400
jfrank@lawfss.com
astolper@lawfss.com
ssims@lawfss.com

*Attorneys for Plaintiffs*