UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDITH JONES, on behalf of herself
and all others similarly situated,

    Plaintiff,

     v.

PNC BANK, N.A.,

    Defendant.

Case No. 1:21-cv-02000

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

In the First Amended Complaint, [34], ("Complaint"), Plaintiff Judith Jones sues Defendant PNC Bank, N.A. ("Defendant" or "PNC") for breach of contract, money "had and received," and a declaratory judgment regarding Guaranteed Asset Protection ("GAP") coverage that she purchased as part of a retail installment contract ("RIC") for a used car she purchased. The Complaint alleges that she became entitled to a partial refund of the GAP coverage fee after she prepaid her RIC but Defendant, who served as creditor and lienholder on the RIC, failed to make the refund as legally obligated. She brings the claims on behalf of herself and a putative class of other Illinois residents who also prepaid on a RIC and did not receive a GAP fee refund. *Id.* Defendant now moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6), [36], and to strike the class allegations under Federal Rule of Civil Procedure 12(f), [38]. For the reasons explained below, this Court grants

1

Defendant's motion to dismiss [36], and denies as moot Defendant's motion to strike [38].

## I.    Background

In January 2012, Plaintiff Judith Jones purchased a used car from a car dealership in Loves Park, Illinois.  She financed it through a finance agreement known as a "Retail Installment Contract" ("RIC").  [34] ¶ 21.  Under the RIC, she agreed to make fixed payments on the car over seventy-two months with interest. The car dealership immediately sold the RIC to PNC, which became the creditor and lienholder on the RIC.  *Id.* ¶¶ 2–3.

When Plaintiff purchased the car pursuant to the RIC, she also purchased "Optional Guaranteed Asset Protection (GAP)" for $595[1] by signing a contract amendment to the RIC ("GAP Addendum").  *Id.* ¶¶ 4–5; [34] at 26.  GAP coverage protects a buyer in the event of a "total loss" of the vehicle; and in such case, the lienholder (here, PNC) waives the difference between the amount insurance pays for the total loss and the amount the buyer still owes on the RIC.  *Id.*  The GAP Addendum refers to the cost of the GAP coverage as the "GAP Charge."  *Id.* at 26.  It also states that GAP coverage remains "completely voluntary and optional," and the buyer may cancel it at any time.  *Id.* at 26 (§§ I.8, II).

In April 2017, Plaintiff paid off her RIC early by sending a written check to PNC for the remaining balance, which PNC received and processed by April 11, 2017.

---

[1] The First Amended Complaint alleges that Plaintiff paid $595 for the GAP coverage, [34] ¶ 4, while the RIC states it cost $695, [37-1] at 5, and the amount listed on the photocopied version of the GAP Addendum attached to the pleadings is not legible, [34] at 26; [37-1] at 8.

[34] ¶¶ 28–29.  Plaintiff alleges that once she prepaid her RIC, she became entitled to a partial refund of the GAP Charge pursuant to the terms of the GAP Addendum. Her claim centers on the following contract language:

> 6.  GAP coverage terminates if You prepay or refinance the Contract to which this Amendment refers.  You are entitled to a refund of the GAP Charge, as outlined in the CANCELLATION PROVISIONS, as of the date of the prepayment or refinance.
>
> . . .
>
> CANCELLATION PROVISIONS
>
> To cancel GAP at any time, or in the event of the early termination of Your loan with the Lienholder, You must provide written notice of this cancellation or early termination of Your loan to the Administrator, Us or the Lienholder within ninety (90) days after Your decision to cancel or the occurrence of the event causing the early termination of loan.  If You notify the Administrator, Us or the Lienholder within thirty (30) days of the Date of Contract, a full refund of the GAP Charge will be made.  After thirty (30) days, the refund will be calculated on a pro-rata basis.

[34] at 26.

Plaintiff alleges that she became entitled to the GAP Charge refund as soon as she prepaid the RIC; she further alleges that the written check she sent to Defendant satisfied any "written notice" requirement set out in the CANCELLATION PROVISIONS, yet Defendant failed to refund the GAP Charge as required.  [34] ¶¶ 12(a)–(c), 38(m), 54.  She brings claims for breach of contract (Count I), money had and received (Count II), and a declaratory judgment (Count III) against Defendant on behalf of herself and a putative class of Illinois residents who also executed vehicle RICs assigned to PNC that included optional GAP coverage, and who paid off the RIC early through written checks but did not receive a GAP Charge refund.  *Id.* at ¶¶ 1, 31, 46–62.

Defendant moves to dismiss [36] arguing that: (1) Plaintiff's breach of contract claim is untimely; and (2) the written check does not satisfy the written notice requirement in the CANCELLATION PROVISIONS, which constituted a condition precedent to any obligation to refund the GAP Charge. [36]; [37]. Defendant also moves to dismiss Plaintiff's claims for money had and received and a declaratory judgment. *Id.*

In response, Plaintiff disputes Defendant's arguments as to her breach of contract claim, but voluntarily abandons her claims for money had and received and a declaratory judgment. [40].

Accordingly, the Court dismisses without prejudice Counts II and III and only considers Defendant's arguments with respect to the breach of contract claim. Defendant also moves to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). [38].

## II. Motion to Dismiss [36]

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6),[2] "the complaint must provide enough factual information to state a claim to relief that is plausible on its

---

[2] Defendant moves to dismiss the contract claim pursuant to Rule 12(b)(6), but both of its arguments rest on affirmative defenses, which technically fall under a Rule 12(c) motion for judgment on the pleadings. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (holding that a motion to dismiss based on statute of limitations technically constitutes "a motion for judgment on the pleadings under Rule 12(c) rather than a motion under Rule 12(b)(6)"); *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("[I]n principle a complaint that alleges an impenetrable defense to what would otherwise be a good claim should be dismissed (on proper motion) under Rule 12(c), not Rule 12(b)(6). After all, the defendants may waive or forfeit their defense, and then the case should proceed."). Where, as here, however, the argument relies upon the allegations of the complaint itself, then "the practical effect is the same." *Brooks*, 578 F.3d at 579.

4

face and raises a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2019). It tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Although a court must accept as true all well-pled factual allegations, it need not accept mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court may consider all "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). As for statute of limitations, specifically, a defendant may raise this defense on a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks*, 578 F.3d at 579 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

### B. Analysis

#### 1. Statute of Limitations

Defendant argues that Plaintiff failed to timely file her breach of contract claim. [36] ¶ 2; [37] at 9–11. It insists that the four-year limitation period under Illinois' UCC Article 2 governs the RIC and GAP Addendum and, if one accepts as true Plaintiff's claim that PNC had to refund her GAP charge after it processed her prepayment on April 11, 2017, then Plaintiff had until April 11, 2021, to file her claim. [37] at 9–11. Plaintiff filed her claim three days late on April 14, 2021, [1].

5

In response, Plaintiff does not dispute that Article 2 governs the RIC; but she argues that Article 2 does not govern the GAP Addendum because it constitutes a promise or obligation "collateral or ancillary" to the RIC. [40] at 9–10. Further, she argues that, even if the four-year limitation period applies, her claim remains timely because the limitation period did not begin to run until a "reasonable time" after her April 11, 2017 prepayment. *Id.* at 10–12.

### a) Whether Article 2 Governs Plaintiff's Contract Claim

The RIC states that Illinois law governs its terms, and the GAP Addendum expressly amended the RIC. [34] at 26; [37-1] at 6.[3] Therefore, Illinois law governs the substance of Plaintiff's breach of contract claim. Illinois law also governs the question of statute of limitations because this Court sits in diversity where the "law of the forum controls" as to procedural matters and, under Illinois law, "statutes of limitations are procedural." *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 300 (7th Cir. 2018).

Illinois has a ten-year statute of limitations period for breach of contract claims, 735 ILCS 5/13-206, but there exists an exception for contracts covered by UCC Article 2 that applies to "transactions in goods" and which Illinois has adopted, 810 ILCS 5/2-102 ("Article 2"). For Article 2 contracts, one must bring a claim "within four-years after the cause of action has accrued" and the "cause of action accrues when

---

[3] Plaintiff only attached the first two pages of the GAP Addendum to her Complaint and did not attach the RIC. [34]. Defendant attached the full GAP Addendum and the RIC to its Motion to Dismiss Memorandum, [38], and the Court may consider Defendant's attachments because Plaintiff expressly refers to them in her Complaint and they are central to her breach of contract claim. *Williamson*, 714 F.3d at 436.

the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id*. § 5/2-725.

As Defendant argues (and Plaintiff does not dispute), Illinois follows the majority approach among states and applies Article 2's limitation period to installment contracts like the RIC here. *See Citizen's Nat'l Bank of Decatur v. Farmer*, 395 N.E.2d 1121 (Ill. App. Ct. 1979) (holding Article 2's four-year limitation period governs an automobile retail installment sales contract); *Fallimento C.Op.M.A. v. Fischer Crane Co.*, 995 F.2d 789 (7th Cir. 1993) (same regarding a promissory note for sale of hydraulic crane equipment governed by Illinois law); *Scott v. Ford Motor Credit Co.*, 691 A.2d 1320, 1325 (Md. 1997) (collecting cases across jurisdictions).

In *Farmer* where Illinois first adopted this rule, a bank sued a debtor for failure to pay on an installment contract used to purchase an automobile. 395 N.E.2d at 1121. The bank argued that Illinois' general 10-year statute of limitations for contracts applied to the installment contract because it constituted a security agreement. *Id*. The court disagreed, finding that Article 2's four-year limitation period applied because the installment contract "is a fundamental part of the contract for sale" and not "separate and distinct from the transfer of the physical possession of the automobile." *Id*. at 1123.

In opposing Defendant's motion, Plaintiff insists that Article 2 does not govern the GAP Addendum because it was an optional add-on that she could cancel at any time, rendering it "collateral or ancillary" to the RIC. [40] at 9–10. In support,

Plaintiff points to 810 ILCS 5/2-701, which states that Article 2 does not impair remedies for "breach of any obligation or promise collateral or ancillary to a contract for sale." [40] at 9.

As Defendant points out, [42] at 7, however, Plaintiff's theory ignores that § 2-701 expressly applies to obligations or promises "collateral or ancillary to a *contract for sale*" (emphasis supplied). Even though Plaintiff did not have to purchase GAP coverage, when she did, the terms of that coverage became part of the RIC, which *Farmer* holds constitutes part of the contract for sale for Article 2 purposes. [34] at 26 ("This is an amendment to the retail installment contract" and if "You purchase option GAP and pay the GAP Charge shown above, Your Contract with the Dealer is amended…"). Plaintiff offers no authority for the proposition that an optional add-on remains "collateral or ancillary" to a contract even after a buyer chooses to purchase it and it becomes part of the contract. Accordingly, the GAP coverage is not "collateral or ancillary" to the RIC and § 2-701 does not apply.

The court's reasoning in *Farmer* provides further support for this conclusion. The *Farmer* Court reasoned that Article 2 governs installment contracts because they set out how the buyer must pay for a purchase, and an "obligation to pay is a fundamental part of the contract for sale." 395 N.E.2d at 1123. Here, the GAP coverage simply amended how much Plaintiff must pay in the event her purchase becomes "a total loss." Thus, even if it was an optional add-on term, once Plaintiff elected to add it, the GAP coverage became an express term of the RIC and a

fundamental part of how Plaintiff must pay for her car.  This remains so even if she retained the right to cancel it in the future.[4]

In support of her theory that the GAP Coverage is "collateral or ancillary" to the vehicle sale, Plaintiff cites only one case:  *Brandewie v. Wal-Mart Stores, Inc.*, No. 14-cv-965, 2015 WL 418157, at *2 (N.D. Ohio Feb. 2, 2015).  [40] at 10.  There, the court examined whether Ohio's Article 2 limitation period governed a claim against Walmart for breaching a promise to provide a full refund when customers return a purchase within ninety days.  *Brandewie*, 2015 WL 418157, at *2.  The court held it did not because Walmart's promise to pay a full refund constituted "a promise collateral or ancillary to a contract for the purchase of goods."  *Id.*

*Brandewie* involved a store's refund policy, however, not a customer's payment obligations under a RIC.  Further, the *Brandewie* Court reasoned that the return policy constituted a "collateral or ancillary" promise because, according to the court, it was merely "an added benefit and convenience for customers and may encourage

---

[4] As Defendant also notes, [37] at 10 n.4, [42] at 8 n.1, when a dispute arises over a mixed contract for the sale of goods and services, Illinois applies the "predominant purpose" test to determine whether the four-year or ten-year limitation period applies.  Under this test, courts examine whether the contract "is predominantly for goods with services being incidental" or "predominantly for services with goods being incidental."  *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 301 (7th Cir. 2018) (quoting *Zielinski v. Miller*, 660 N.E.2d 1289, 1294 (Ill. 1994)).  If the goods predominate, then a court applies the four-year limitations period to the entire contract.  *Id.*  Although the GAP coverage here likely does not constitute a "service," a few courts interpreting Illinois law have also applied the predominant purpose test more broadly to mixed contracts for "the sale of goods" and "non-goods."  *See, e.g., Midwest Mfg. Hldg., L.L.C. v. Donnelly Corp.*, 975 F. Supp. 1061, 1066 (N.D. Ill. 1997) (applying Illinois' "predominant purpose test" to analyze a contract for the sale of a business, which included goods (*e.g.*, equipment, inventory, supplies) and non-goods (*e.g.*, intellectual property, accounts receivable)); *Fink v. DeClassis*, 745 F. Supp. 509, (N.D. Ill. 1990) (applying Illinois' "dominant purpose" test to a business sale that included tangible goods as well as non-goods (*e.g.*, tradenames, trademarks, goodwill)).  The GAP Coverage more properly constitutes a non-good and if one applied the predominant purpose test here, then the transaction certainly qualifies as predominantly for goods (*i.e.*, the vehicle).

them to purchase an item." *Id*. Illinois case law casts doubt on any adoption of the *Brandewie* Court's reasoning by Illinois. For example, again looking at *Farmer*, 395 N.E.2d at 1123, the installment contract arguably benefited the buyer and encouraged him to purchase the vehicle, but that did not render it "collateral or ancillary" to the terms of the transaction. Instead, the *Farmer* Court focused on whether the payment terms constituted a "fundamental part" of the purchase and held that they did because they dictated the terms under which the buyer must pay for his purchase. As already discussed, the GAP Coverage here simply modifies the terms and amount under which the buyer must pay for the purchase.

To take another example, in *Cosman v. Ford Motor Co.*, a court found that Article 2's four-year limitation period governed a claim against an automobile manufacturer for breach of promises to repair a vehicle's powertrain. 674 N.E.2d 61 (Ill. App. Ct. 1996). Similar to *Farmer*, the *Cosman* Court reasoned that the promises to repair "arise out of and were part of the consideration in the contract for sale of the vehicle." *Id*. at 67. Thus, the *Cosman* Court applied Article 2 *because* the promises to repair benefited the buyer and enticed him to purchase the vehicle. This reasoning undermines reliance on *Brandewie* in this case.

In short, this Court finds that Article 2's four-year limitation period governs Plaintiff's claim for breach of the GAP Addendum.

### b) Whether Plaintiff Brought Her Claim Within Four Years of Accrual.

The Court now examines when Plaintiff's claim accrued. Article 2 requires that a plaintiff sue "within four-year after the cause of action has accrued" and the

"cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id*. § 5/2-725. Defendant argues that, taking as true Plaintiff's theory that she became entitled to a partial refund of the GAP Charge once she prepaid the RIC balance, Plaintiff's claim accrued on April 11, 2017 (the date Defendant processed her prepayment). Plaintiff filed her initial complaint on April 14, 2021, making her suit three days late. [37] at 10–11; [42] at 10–11.[5]

In response, Plaintiff stands on her allegation that she became entitled to a GAP refund upon prepayment, but she argues that the GAP Addendum does not specify when Defendant must issue the refund. [40] at 11. According to her, when a contract does not provide a deadline to perform an obligation, "a reasonable time for performance will be implied" under Illinois law. *Id*. (quoting *Murphy v. Roppolo-Prendergast Builders, Inc.*, 453 N.E.2d 846, 848 (Ill. App. Ct. 1983)). She insists that the limitation period does not begin to run until after this "reasonable time" expired, which "will undoubtedly be more than 3 days after" April 11, 2017, *id*. at 6.[6]

Despite Plaintiff's efforts, Illinois law does not give debtors "a reasonable time" to pay a debt after it becomes due, nor does it state that a creditor's cause of action accrues a "reasonable time" after the creditor becomes entitled to payment. Rather,

---

[5] In this regard, Defendant urges this Court to apply the same accrual rule that Illinois applies to creditor actions to collect a payment, [42] at 10, which states that a "cause of action accrues, and the statute of limitations begins to run when a creditor may legally demand a payment from the debtor." *Kozasa v. Guardian Elec. Mfg. Co.*, 425 N.E.2d 1137, 1142 (Ill. App. Ct. 1981).

[6] To extend the limitations period for a "reasonable time" after April 11, 2017. [40] at 11, Plaintiff cites several cases, but none involve a simple payment obligation like the one presented here, and some did not even apply Illinois law. *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 829 (7th Cir. 2020); *BLD Prods., LLC v. Remote Prods., Inc.*, 509 Fed. App. 81 (2d Cir. 2013); *Zucker v. Waldmann*, No. 5034679, 2015 WL 390192 (N. Y. Sup. Ct. Jan. 23, 2015); *Moede v. Pochter*, 701 F. Supp. 2d 997 (N.D. Ill. 2009).

Illinois law holds that the debtor owes the debt when it becomes due, and that the cause of action accrues when the creditor may legally demand payment under the contract. *See Kozasa v. Guardian Elec. Mfg. Co.*, 425 N.E.2d 1137, 1142 (Ill. App. Ct. 1981). Applying these well-established principles here, Plaintiff's cause of action accrued as of the date that she could legally demand that Defendant refund the GAP Charge—the day Defendant processed her early final payment and owed her a refund.

Of course, the parties also dispute whether Plaintiff had to provide written notice of prepayment under the CANCELLATION PROVISIONS before she became entitled to a GAP Charge refund; and they dispute whether her written prepayment check satisfies any notice requirement. [37]; [40]; [42]. The Court does not need to resolve this dispute, however, because Plaintiff's claim remains untimely under any theory of recovery that she posits. That is, if the contract did not include a written notice condition precedent, then Plaintiff became entitled to a GAP Charge refund upon her prepayment, which occurred no later than April 11, 2017 when Defendant recorded her payment. Likewise, if the contract included a written notice condition precedent but her written check satisfied it, then Plaintiff's claim still accrued no later than April 11, 2017.[7]

---

[7] The Complaint generally alleges that Plaintiff "provided written notice to PNC, the 'Lienholder,' of the early payoff of her finance agreement in April 2017," [34] ¶ 28, but it later specifically alleges that Plaintiff met any written notice requirement through the written payment check to PNC. *Id*. ¶¶ 38(m), 54. Although Federal Rule of Civil Procedure 9(c) only requires a plaintiff to "allege generally that all conditions precedent have occurred or been performed," Plaintiff's specific allegations regarding written notice through her prepayment check and her arguments opposing Defendant's motion to dismiss make clear that the written check constitutes the only alleged "written notice to PNC" that she provided. *Id*. ¶ 28. Thus, if the contract includes a written notice condition precedent and the written check does not suffice (as Defendant argues), then Plaintiff has pled herself out of court. *See Kinesoft Dev. Corp. v. Softbank Holdings Inc.*, 139 F. Supp. 2d 869, 889 (N.D. Ill. 2001) (holding that,

Accordingly, Plaintiff's claim against Defendant accrued no later than April 11, 2017, and she had to bring suit by April 11, 2021. She did not. Her breach of contract claim must be dismissed with prejudice as untimely. And because she voluntarily dismisses her other two claims against Defendant, this resolves all pending claims on behalf of Plaintiff.

## III. Class Allegations

Defendant also moves to strike the Complaint's class allegations under Federal Rule of Civil Procedure 12(f). [38]. But Plaintiff is the only named plaintiff and Plaintiff has no remaining claims against Defendant, so there remains no named Plaintiff in the case. The Court thus dismisses the collective action claims on that basis. *See Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 653 (7th Cir. 2014) (holding district court properly dismissed class claims upon dismissal of named plaintiff's claims based on statute of limitations and where Plaintiff had not moved for class discovery prior to dismissal).

Having done so, the Court also denies as moot Defendant's motion to strike the class allegations, [38]. The Court resolves Plaintiff's breach of contract claim on statute of limitations grounds, however, and dismisses Plaintiff's other claims only because she voluntarily withdrew them. It makes no finding regarding the

---

under Illinois law, a condition precedent must be met "before the other party is obligated to perform." (quoting *MXL Indus., Inc. v. Mulder*, 623 N.E.2d 369, (Ill. App. Ct. 1993))); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("[I]f the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief.").

requirements of Federal Rule of Civil Procedure 23 and the Court's dismissal of this case has no preclusive effect as to any putative class member other than Plaintiff.

## IV.    Conclusion

For the reasons stated above, the Court grants Defendant's motion to dismiss, [36], and dismisses Count I with prejudice and Counts II and III without prejudice. Because no named plaintiff remains, the Court also dismisses the class claims and denies as moot Defendant's motion to strike the class allegations, [38]. Civil case terminated.

Dated: September 26, 2022

Entered:

John Robert Blakey
United States District Judge